2024 IL App (1st) 232090-U

FOURTH DIVISION
Order filed: August 15, 2024

No. 1-23-2090

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| OAK TERRACE CONDOMINIUMS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2021 CH 6197 |
| | ) | |
| STEPHEN DURR, | ) | Honorable |
| | ) | Eve M. Reilly, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Following an order finding him in default in an action for the judicial sale of real estate, the defendant's motion to vacate the default filed under section 2-1301 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1301 (West 2022)) was untimely when it was filed more than thirty days after the order confirming the judicial sale, and the defendant's petition to vacate the default under section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2022)) was barred by section 15-1509 of the Illinois Mortgage Foreclosure Law (the Foreclosure Law) (735 ILCS 5/15-1509 (West 2022)) when the judicial sale had already been confirmed and the deed had been delivered to the buyer.

¶ 2    This appeal concerns an action by Oak Terrace Condominiums (the Association) seeking the judicial sale of Stephen Durr's condominium unit. Durr was defaulted for failing to appear, and his unit was then sold in a judicial sale. After the circuit court confirmed the sale and the deed was delivered to the Association, Durr filed a motion to vacate the default under section 2-1301 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1301 (West 2022)) and a separate petition to vacate the default under section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2022)). The circuit court denied the section 2-1301 motion as untimely and dismissed the section 2-1401 petition as procedurally barred. We affirm the court's order.

¶ 3    On December 13, 2021, the Association filed a complaint in the circuit court seeking to force the judicial sale of Durr's unit at 435 West Oakdale Avenue, Unit 2E, Chicago, IL 60625 (the Unit). The Association alleged that Durr had violated the Declaration of Condominium Ownership and of Easements, Restrictions and Covenants for Oak Terrace Condominiums (the Declaration) though a course of conduct that included a July 7, 2021, incident in which Durr exposed himself in a common area to another resident, which ultimately led to his incarceration. The complaint alleged that a judicial sale was authorized by the Declaration. The Association mailed Durr's summons to the correctional center where he was then incarcerated, and the Cook County Sheriff's Office completed personal service on Durr on December 23, 2021. On February 8, 2022, the Association moved for a default against Durr based on his failure to appear, and on February 16, 2022, the circuit court granted the motion and defaulted Durr.

¶ 4    On March 18, 2022, the court entered an order of possession terminating Durr's interest in the Unit, authorizing a judicial sale of the Unit, and entering a money judgment against Durr for attorney's fees, court costs, and unpaid condominium fees. On March 23, 2022, Durr filed an

appearance and a *pro se* "Motion to Stay Proceedings." In the motion, Durr stated that he had received a copy of the complaint, as well as a summons for an April 12 hearing. Durr further alleged that he intended to attend the scheduled hearing, file a response to the complaint, pay the appearance fee, and retain counsel, if necessary. Lastly, Durr requested that the "proceedings be stayed" "until [he] [is] released from detainment" and that he would notify the court when he is released. On April 20, 2022, Durr filed a notice of appeal purporting to appeal the circuit court's March 18 order of possession.

¶ 5 On April 29, 2022, the judicial sale was held, at which the Association was the successful bidder. That same day, Durr was released from incarceration and resumed occupying the unit. On June 2, 2022, the Association filed a motion to confirm the judicial sale. Hearings on the motion were continued four times while Durr's appeal remained pending. After Durr's appeal was dismissed for lack of jurisdiction on August 24, 2022, the circuit court entered an order confirming the sale on August 31, 2022. The deed to the Unit was delivered to the Association on September 1, 2022.

¶ 6 On October 7, 2022, Durr filed a *pro se* "Motion for Withdrawal of Court Orders of August 1st, 31st and to Reopen Case (Reconsideration of Decision)." In the motion, Durr alleged that he had timely mailed a notice of appearance on January 20, 2022, but that it had been rejected by the circuit court clerk's office and returned to him because he had not also submitted an application for the waiver of filing fees. He then resubmitted the notice with the waiver application, and the notice was stamped as filed on March 23, 2022. Durr claimed that the court should have acknowledged his initial notice of appearance and not found him in default. He also alleged that he had not received the notice of default or any notices regarding the hearings held on February

16 and March 18, 2022. Further, Durr denied the Association's allegations of misconduct and claimed that the Association had not provided him with all of the notices required under the Declaration. Accordingly, he asserted that the Association did not have sufficient grounds to force the sale of the Unit. For those reasons, Durr sought "reversal of the court order of March 18[,] 2022," and dismissal of the Association's complaint.

¶ 7    On April 3, 2023, Durr, now represented by counsel, filed a "Motion to Vacate the Default Order of Possession" under section 2-1301 and a petition to vacate the February 16, 2022, default under section 2-1401. In the section 2-1301 motion, Durr alleged that he had difficulty finding an attorney while incarcerated and that, after he was released, he had further difficulty finding counsel to take the case *pro bono* because he had already been defaulted. He further argued that his March 23, 2022, motion to stay should have been construed as a section 2-1301 motion to vacate. For relief, at different points in the motion Durr requested the vacation of both the February 16, 2022, order of default and the March 18, 2022, order of possession.

¶ 8    The Association filed a response to the section 2-1301 motion in which it argued, among other things, that, under section 15-1509 of the Illinois Mortgage Foreclosure Law (the Foreclosure Law) (735 ILCS 5/15-1509 (West 2022)), a section 2-1301 motion cannot be filed after the confirmation of a judicial sale and that Durr's section 2-1301 motion was also untimely. In his reply, Durr argued that the motion was not barred by section 15-1509 because it was "anchored" to his March 23, 2022, motion to stay, which he contended should have been construed as a timely section 2-1301 motion. He also argued that section 15-1509 did not bar his motion because section 15-1508 of the Foreclosure Law (735 ILCS 5/15-1508 (West 2022)) allows for relief when "justice was otherwise not done."

¶ 9    In his section 2-1401 petition, Durr alleged that he had exercised due diligence in filing the petition within two years of the default; that he had exercised due diligence throughout the case through the filing of his motions; and that he had a meritorious defense because the requirements set forth in the Declaration for the termination of his ownership had not been met, as further explained in a proposed motion to dismiss that he attached to his petition. Durr ultimately sought vacation of the February 16, 2022, order of default.

¶ 10    The Association moved to dismiss Durr's section 2-1401 petition, arguing, among other things, that dismissal under section 2-619(a)(9) was appropriate because section 15-1509 bars the filing of a section 2-1401 petition after the confirmation of a judicial sale. In his reply, Durr again argued that, as with his section 2-1301 motion, his petition was permitted under section 15-1508.

¶ 11    Following a hearing, the circuit court entered an order on October 6, 2023, denying Durr's section 2-1301 motion and dismissing his section 2-1401 petition. Regarding the section 2-1301 motion, the court found that the motion was untimely, and it rejected Durr's argument that the March 23, 2022, motion to stay should have been construed as a section 2-1301 motion, with the court observing that the motion had not requested that any order be vacated. As for the section 2-1401 petition, the court found that the petition was barred by section 15-1509 and that, even if it were not barred, Durr had not exercised due diligence in presenting his defense when he had failed to appear at four court dates following his release from incarceration. This appeal follows.

¶ 12    Before considering the merits of Durr's appeal, we must first address the Association's motion to dismiss Durr's appeal for noncompliance with Supreme Court Rule 341 (eff. Oct. 1, 2020). The Association is correct that Durr's *pro se* brief lacks an introductory paragraph, a statement of jurisdiction, a statement of the facts, or an argument section, as required by Rule

341(h)(2), (h)(4), (h)(6), and (h)(7), respectively. Additionally, Durr's statement of the issues is confusing, and, in the absence of separate fact and argument sections, Durr's brief instead contains a "Statement of the Appeal," which presents a mixture of factual assertions and apparent legal arguments unsupported by citations to the record or legal authorities. For these reasons, the Association argues that dismissal of Durr's appeal is warranted.

¶ 13    "The rules of procedure concerning appellate briefs are rules and not mere suggestions." *Niewold v. Fry,* 306 Ill. App. 3d 735, 737 (1999)). Indeed, "[t]he appellate court is not a depository into which a party may dump the burden of research." *People v. O'Malley,* 356 Ill. App. 3d 1038, 1046 (2005). Further, "[t]he fact that a party appears *pro se* does not relieve that party from complying as nearly as possible to the Illinois Supreme Court Rules for practice before this court." *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8 (citing *Peeples v. Village of Johnsburg,* 403 Ill. App. 3d 333, 335 (2010)). Durr's failure to substantially comply with the requirements of Rule 341 creates a justifiable basis for the striking of his brief or the dismissal of his appeal. See *Hall v. Naper Gold Hospital LLC*, 2012 IL App (2d) 111151, ¶ 7. However, because the issues on appeal are straightforward and ascertainable from the order on review and the Association's brief, we deny the Association's motion to dismiss and will consider the merits of Durr's appeal. See *Ellis v. Flannery*, 2021 IL App (1st) 201096, ¶ 8.

¶ 14    We conclude that the circuit court did not err in denying Durr's section 2-1301 motion or dismissing his section 2-1401 petition. First, we agree with the court that Durr's section 2-1301 motion to vacate was untimely. Section 2-1301(e) provides that "[t]he court may in its discretion, before final order or judgment, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be

reasonable." Thus, a section 2-1301 motion to vacate must be filed either before judgment is entered or within thirty days following its entry. *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 12. For foreclosure actions in particular, "it is the order confirming the sale, rather than the judgment of foreclosure, that operates as the final and appealable order" (*EMC Mortgage Corp. v. Kemp,* 2012 IL 113419, ¶ 11), meaning that "a motion to vacate a default judgment of foreclosure brought before the order confirming the sale or within 30 days thereafter would be timely" (*McCluskey*, 2013 IL 115469, ¶ 12). Indeed, "[w]hen a motion to vacate a judgment is brought more than 30 days after the entry of a final judgment, that motion will ordinarily be construed as a petition for relief from a final judgment under section 2-1401 of the Code." *In re J.D.*, 317 Ill. App. 3d 445, 448 (2000) (citing *Lodolce v. Central Du Page Hospital,* 216 Ill. App. 3d 902, 912 (1991)); see also *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d 254, 259 (2008) (holding that, when a section 2-1301 motion to vacate was filed more than 30 days after entry of final judgment, the trial court was correct to construe it as a section 2-1401 petition).

¶ 15     Durr's April 3, 2023, section 2-1301 motion was filed more than seven months after the circuit court's August 31, 2022, order confirming the judicial sale. Therefore, the motion was untimely. Further, although Durr argues that his March 23, 2022, motion to stay should have been construed as a timely section 2-1301 motion, we agree with the circuit court's rejection of that argument. In the motion to stay, Durr did not make any arguments relating to the default, and he did not in any way ask for the default to be vacated. Instead, he only asked that proceedings be stayed until he was released from incarceration. We also note that, although he has not made this argument, Durr's October 7, 2022, motion seeking the vacation of the March 18, 2022, order of possession would have also been untimely if it were construed as a section 2-1301 motion.

Accordingly, Durr did not timely move for relief under section 2-1301, and the court did not err in denying his motion.

¶ 16    As for Durr's section 2-1401 petition, we again agree with the circuit court that the petition was barred by section 15-1509(c). As set forth in the order of sale, the judicial sale of the Unit was governed by "the judicial sale procedures and requirements set forth in 735 ILCS 5/15-1507 and other provisions governing judicial sales in mortgage foreclosure actions." Durr has not contested the applicability of those laws either on appeal or in the circuit court, and we see no reason why the Foreclosure Law should not govern the judicial sale at issue, which is substantially similar in nature to a foreclosure. Looking then at section 15-1509(c), that provision states unequivocally that, after a court's confirmation of a foreclosure sale, the vesting of title in the purchaser by deed "shall be an entire bar of *** all claims of parties to the foreclosure." The effect of this "clear and unambiguous language" is that, with certain exceptions not applicable here, following the confirmation of a foreclosure sale and the transfer of ownership by deed, section 15-1509(c) bars even a petition filed under section 2-1401. *U.S. Bank National Ass'n v. Prabhakaran*, 2013 IL App (1st) 111224, ¶ 30 ("There is simply no Illinois authority to support the defendant's argument that she can utilize section 2-1401 to circumvent section 15-1509(a) or section 15-1509(c) of the Foreclosure Law after the circuit court confirmed the sale of the property."); see also *Harris Bank, N.A. v. Harris*, 2015 IL App (1st) 133017, ¶ 48 ("[A] section 2-1401 petition cannot be asserted in an effort to vacate the circuit court's confirmation of a foreclosure sale.").

¶ 17    Although Durr argues that section 15-1508(b) allows for a judicial sale to be set aside when "justice was otherwise not done," that provision only applies before the sale has been confirmed. Indeed, the full context for that provision is that, when a party files a motion seeking the

confirmation of a judicial sale, "[u]nless the court finds that *** justice was otherwise not done, the court shall then enter an order confirming the sale." Thus, section 15-1508(b) provides grounds for relief "after the sale but *prior* to the confirmation." (Emphasis added.) *Adler v. Bayview Loan Servicing, LLC*, 2020 IL App (2d) 191019, ¶ 24. Once the court has confirmed the sale and ownership has been transferred by deed, section 15-1509(c) bars any claims brought by a party to the foreclosure.

¶ 18 Accordingly, the circuit court did not err in denying Durr's section 2-1301 motion as untimely and dismissing his section 2-1401 petition as barred by section 15-1509(c).

¶ 19 Affirmed.